[Civ. No. 1577. Second Appellate District, Division One.—February 3, 1928.]

THE PEOPLE, Appellant, v. MATTHEW K. NUNO, Respondent.

(1)

U. S. Webb, Attorney-General, John L. Flynn and John D. Ricker, Deputies Attorney-General, Asa Keyes, District Attorney, and Leo Aggeler, Deputy District Attorney, for Appellant.

J. Marion Wright for Respondent.

WOOD (W. J.), J., *pro tem.*—Defendant, a Japanese, was accused by information filed by the district attorney of the crime of murder and was convicted of manslaughter. He made a motion for a new trial, which was granted upon the ground that the evidence was insufficient to justify the verdict. From this order the district attorney has appealed.

The defendant was in charge of an orchard situated on Duarte Road, Arcadia. He had been having trouble in protecting the orchard from numerous petty thieves. The deceased, Victoriano Sanchez, and two other Mexican youths entered defendant's orchard and began stealing plums. Defendant's attention was called to the three boys while they were in the orchard, but before he could reach them they left and went down the road a short distance and began eating part of the plums. Defendant drove up with his automobile accompanied by his wife and children. Sanchez was the largest of the Mexican boys and was considerably larger than the defendant. The testimony of the other two boys, Torres and Barrios, who testified for the People, differs from that of the defendant. They stated that after some conversation the defendant grabbed the arm of Sanchez, whereupon all three ran into an orange orchard. Defendant followed them a short distance and then went to the automobile and procured a gun. He then pursued them, firing four shots. At the time of the shooting several rows of trees were between the boys and defendant. Barrios testified that he did not see defendant point the gun. Torres testified that defendant pointed the gun at the boys, but was impeached by a showing that at the preliminary examination he had testified that he could not see the defendant above the waist. Defendant testified in substance that upon reaching the boys he asked their names and addresses, to which he received evasive answers; that when the boys laughed and refused to tell their names he took hold of the largest boy and held him by the arm; that he did this be-

cause he wanted to arrest him and get the police; that while he was holding the deceased he told his son, nine years of age, to leave the automobile and go to the gasoline station near by and get the motor officer; that thereupon the deceased jerked away and all three boys ran into an orange orchard; that defendant ran after deceased and tried to catch him, but failing, went back to his car and got his gun; that his purpose was to catch the defendant and arrest him, and that he had taken his gun with him so that he could arrest the boys more easily; that when he procured the gun he ran back into the orange grove and shot it into the ground about five feet in front of him; that he did not point the gun at the boys nor in their direction nor were they in sight when he shot; that he shot only to scare the boys so that they would not return to his orchard; that he was not angry and never intended to shoot any of the boys; that he did not know the deceased was injured until later in the day.

Dr. Frank R. Webb, the autopsy physician, testified that the bullet entered at a point about level with the right ear and at about four inches behind the ear; that at that place the skull is a thin plated bone, thinner than the base of the skull; that the bullet after penetrating this portion of the skull did not hit any hard substance until it came to the place of exit on the left temple about one inch in front of the border line of the ear, where it lodged just beneath the skin; that the point of entrance was an elongated or an oval hole; that if the bullet had entered in a perfectly direct line one would expect to find a rounded opening rather than an elongated one. Edward C. Crossman, after qualifying as an expert on small firearms, testified that he obtained the gun from which the shot was fired from the custodian of criminal records on a court order for the purpose of making experiments; that he made various tests by shooting through bone at various distances for the purpose of determining if shooting a bullet through bone would cause it to be in the condition in which the bullet in question was found; that the bullet fired into the skull of Sanchez was a metal-cased bullet and the base and one side of the bullet were flattened and the nose of the bullet indented; that the bullet was scarred and scratched, all of which was shown by photographs; that all of the bullets which the witness had

shot through bone of various thicknesses had a uniform flattened appearance at the point and the bases were perfectly round in every case; that in his opinion the bullet in question struck some object and glanced before it hit the skull of the deceased, the base of the bullet having been flattened badly on one side, which indicated to him that the bullet must have tumbled end over end; that in his opinion the bullet could not have been scarred and gouged as it was simply by being shot into a human skull in the way shown in the skull of deceased. There was some evidence that a sign had been placed against one of the plum trees bearing the words "If you steal plums again I will shoot you." Defendant testified that he had instructed his son to make a sign to keep people from stealing plums, but that he did not tell the boy what to put on the sign and did not know what was written upon it.

Appellant cites several cases in which verdicts of manslaughter were returned upon evidence showing that the defendants had accidentally discharged firearms and in which the judgments were upheld after the trial courts had denied motions for new trials. In appellant's brief this statement is found: "These cases, however, on facts not as strong as those in the case at bar, held that the evidence was sufficient to justify a verdict of manslaughter. It therefore must follow that if the evidence in the case at bar was sufficient to justify a verdict of manslaughter, then the trial court abused its discretion in granting a new trial." This is not a correct statement of the law. The cases are innumerable in which it is held that if the trial court denies a motion for a new trial upon conflicting evidence the appellate courts will not interfere with the ruling. The rule is entirely different, however, where the trial court after listening to the testimony concludes that the evidence is insufficient. In such cases it is the duty of the trial court to grant a new trial and its action in so doing will not be reversed except upon a showing of an abuse of discretion. We are not merely to decide whether or not the judgment would have been upheld if the trial court had denied the motion for a new trial. The showing must be far stronger to justify a reversal in a case where the trial court in the exercise of its discretion has granted a new trial. In *People* v. *Chew Wing Gow,* 120 Cal. 298 [52 Pac.

657], the court, speaking through Mr. Justice Temple, says: "It is claimed by the attorney-general that the judge in granting a new trial abused the discretion reposed in him by the law. It is made his duty to grant a new trial if in his opinion the verdict is against the evidence. This is one of the most important duties which the trial judge has to perform, and, since no efficient review of his action can be had, it is peculiarly incumbent upon the judge to weigh the evidence with care, and grant a new trial when, in his opinion, the interests of justice require it. In my opinion, there is no more prolific cause of the miscarriage of justice than the reluctance of trial judges to grant new trials in criminal cases. This court can review the evidence only so far as it is necessary to pass upon points of law raised; and, although there are cases in which it is assumed that this court will on appeal review such an order as that involved here, no case can be found in which an order granting a new trial in a criminal case for insufficiency of the evidence was reversed."

 It is manifest that the trial judge after hearing the evidence must have concluded that the testimony of the defendant, re-enforced by that of the expert witnesses, was worthy of credence. In granting the motion for a new trial he did not abuse the discretion reposed in him by law.

The order granting the motion for a new trial is affirmed.

Houser, Acting P. J., and York, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 2, 1928.

Preston, J., and Langdon, J., dissented.